[Crim. No. 9125.   May 25, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. JACK RAY
CULBERTSON, Defendant and Appellant.

Harry Ellman and Melvyn B. Stein for Defendant and
Appellant.

Edward T. Butler, City Attorney, and James D. Allen,
Deputy City Attorney, for Plaintiff and Respondent.

Before Glen, P. J., Toothaker, J., and Conyers, J.

THE COURT.—After a jury trial defendant was found guilty of violating Penal Code, section 311.2—knowingly having in his possession, with intent to exhibit, obscene motion pictures.

Defendant appeals on the grounds that the films were unlawfully seized and that as a matter of law the films were not obscene.

■ At the time of his arrest, defendant owned and operated the E Street Newsstand in downtown San Diego. Located in the first floor area of the business were four machines for the viewing of peep-show movies. Just prior to defendant's arrest—without a warrant—the officers had obtained four rolls of 16 millimeter film in a second floor area above defendant's business.

Prior to defendant's arrest, but on the same day, officers had been conducting an investigation into the San Diego distribution of so-called peep-show or girlie movies owned by a man in Los Angeles. Officers had already seized some of the film from one of the local outlets. The manager of that business had been arrested and advised the officers that he worked for the Los Angeles owner and with two other local men helped to edit the films and circulate them among certain named stores in San Diego. Defendant's business was one of those named.

The officers proceeded to the defendant's store and inquired of the defendant whether they could look at the film on the peep shows in the rear of the business premises. Defendant told them on that occasion that there was no film on the machines; that someone had removed them, but that he did not know the identity of that person. The officers asked him if he knew where that person put the film, and defendant replied that he did not know. Defendant permitted the officers to verify that there was no film then on any of the projectors. The officers left defendant's place of business.

Very quickly thereafter the officers viewed other film in locations identified by the San Diego agent (then under arrest himself), and arrested those owners or operators. These men—now three in number—each related the same facts about the ownership, distribution, servicing and display of the films as told to the officers by the San Diego agent. Two of the men, newly arrested, admitted to assisting the San Diego agent in his "switching around" and servicing of the films. One of these men told the officers that he had removed the film from the projectors in defendant's business prior to the officers'

first call there. He volunteered to take the officer back to defendant's business and get the film. This man and an officer returned to defendant's store. The man led the officer directly through defendant's store to the back, and up a flight of stairs, and directly at the head of the stairway, along the wall, were some stacked newspapers from which the man removed the film in evidence. One of the rolls of film was wound entirely on one reel; the other three rolls of film were each in a continuous roll but divided between two reels.[1] The man accompanying the officer stated that this was the film that he had removed from the defendant's peep shows downstairs. He then gave the film to the officer. Defendant was then placed under arrest on a charge of conspiracy to violate Penal Code, section 311.2.

The jury viewed the films in evidence and found them to be obscene. This court has necessarily viewed the films since the question of what is obscene is a question of "constitutional fact." (*Zeitlin* v. *Arnebergh*, 59 Cal.2d 901 at page 910 [31 Cal.Rptr. 800, 383 P.2d 152].)

These films are the product of the same ownership and distribution pattern as those viewed by us in *People* v. *Campise, ante,* p. 905 [51 Cal.Rptr. 815], opinion filed this date. As one witness testified in the case at bench: "all of the film out of the four separate locations were very similar, very little different in them."[2]

The sheer volume and duration of the exhibits in the two cases has dulled our ability to relate the identity of any particular performer. The atmosphere and the flavor of the performances in each case however are unmistakably the same. (See *People* v. *Campise, supra.*) Therefore, for the reasons stated in that decison, we find the films here to be obscene within the meaning of Penal Code, section 311.2.

With respect to defendant's contention that the seizure was unlawful, it might have been argued by the People that the man actually taking the film and handing it to the officer had the right to take it and so deliver it as an agent of the owner acting with the implied permission of the "licensee" (i.e. the defendant). It is not necessary however to belabor this

---

[1] One witness attempted to clarify this as follows: "there would be one film, part of it would be on two separate reels as though it hadn't been rewound. This was a case in three of the films. On one film it was all wound up on one reel. So there was [sic] seven separate reels." (Rpr. Tr., p. 35.)

[2] Reporter's Transcript, page 37.

construction of the matter, as it was apparently not pursued in the trial court.

The People attempt to justify the search and seizure without a warrant by showing that the officers had reasonable cause to believe that the defendant was involved in a criminal conspiracy for the distribution and exhibition of obscene film. We believe that the evidence sustains the trial court's ruling that it was a lawful arrest. The trial judge ruled that the officer had sufficient information to believe that a felony had been committed by the defendant (conspiracy to exhibit obscene films).

■ If the circumstances be viewed as involving government search and seizure, then the mere fact that the search preceded the arrest is immaterial. (*People* v. *Vice,* 147 Cal. App.2d 269 [305 P.2d 270]; *People* v. *Brown,* 45 Cal.2d 640 [290 P.2d 528].)

The judgment is affirmed.